# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

CHRISTOBAL VIGIL,

        Plaintiff,

v.                                  CIV 18-0691 KBM

NANCY A. BERRYHILL,
Acting Commissioner of Social
Security Administration,

        Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

THIS MATTER is before the Court on Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum (*Doc. 16*) filed on November 14, 2018. Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73(b), the parties have consented to me serving as the presiding judge and entering final judgment. *See Docs. 4, 7, 8.* Having considered the record, submissions of counsel, and relevant law, the Court finds Plaintiff's motion is not well-taken and will be denied.

## I.    Procedural History

On May 4, 2015, Mr. Christobal Vigil (Plaintiff) filed applications with the Social Security Administration for a period of disability and disability insurance benefits under Title II of the Social Security Act (SSA), and for Supplemental Security Income (SSI) under Title XVI of the SSA. Administrative Record[1] (AR) at 33, 271-88. Plaintiff originally

---

[1] Document 12-1 contains the sealed Administrative Record. *See Doc. 12-1.* The Court cites the Administrative Record's internal pagination, rather than the CM/ECF document number and page.

alleged a disability onset date of January 1, 1996. AR at 33, 271. The Administrative
Law Judge (ALJ) noted that Plaintiff "has acquired sufficient quarters of coverage to
remain insured through June 30, 2008. Thus, [he was required to] establish disability on
or before that date in order to be entitled to a period of disability and disability insurance
benefits" pursuant to Title II. AR at 34.

On June 12, 2017, however, Plaintiff, through his attorney, amended the
disability onset date to May 4, 2015, thus dismissing his claim under Title II. AR at 33,
260. His claim for SSI, however, remained pending. "While a Title II claimant seeking
disability insurance benefits must prove disability prior to her [date last insured], there is
no such requirement for Title XVI claimant seeking SSI." *Gabaldon v. Barnhart*, 399 F.
Supp. 2d 1240, 1250 (D.N.M. 2005) (citing SSR 83-20, 1983 WL 31249, at *1 (Jan. 1,
1983)).

Disability Determination Services (DDS) determined that Plaintiff was not
disabled both initially (AR at 111-13) and on reconsideration (AR at 149-51). Plaintiff
requested a hearing with an Administrative Law Judge (ALJ) on the merits of his
applications. AR at 210-11.

Both Plaintiff and a vocational expert (VE) testified during the *de novo* hearing.
*See* AR at 78-110. ALJ Cole Gerstner issued an unfavorable decision on November 6,
2017. AR at 30-54. Plaintiff submitted a Request for Reconsideration to the Appeals
Council (AR at 196-97), which the council denied on May 25, 2018 (AR at 1-6).
Consequently, the ALJ's decision became the final decision of the Commissioner. *See
Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003).

**II.     Applicable Law and the ALJ's Findings**

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *see also* 20 C.F.R. § 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009).

The claimant has the burden at the first four steps of the process to show: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) meet or equal one of the listings in Appendix 1, Subpart P of 20 C.F.R. Pt. 404; or (4) pursuant to the assessment of the claimant's residual functional capacity (RFC), he is unable to perform his past relevant work. 20 C.F.R § 416.920(a)(4)(i-iv); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citations omitted). "RFC is a multidimensional description of the work-related abilities [a claimant] retain[s] in spite of [his] medical impairments." 20 C.F.R. § 404, Subpt. P, App. 1 § 12.00(B); *see also* 20 C.F.R. § 416.945(a)(1). If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that the claimant retains sufficient . . . RFC to perform work in the national economy, given his age, education, and work experience." *Grogan*, 399 F.3d at 1261 (citing *Williams v.*

*Bowen*, 844 F.2d 748, 751 & n.2 (10th Cir. 1988) (internal citation omitted)); *see also* 20 C.F.R. § 416.920(a)(4)(v).

At Step One of the process, ALJ Gerstner found that Plaintiff "has not engaged in substantial gainful activity since May 4, 2015 . . . ." AR at 36 (citing 20 C.F.R. §§ 404.1571-1576, 416.971-976). At Step Two, the ALJ concluded that Plaintiff "has the following severe impairments: posttraumatic stress disorder [PTSD]; and bipolar disorder." AR at 36 (citing 20 C.F.R. §§ 404.1520(c), 416.920(c)). The ALJ noted the following non-severe impairments: "lumbago, hepatitis C, gastroesophageal reflux disease (GERD), agoraphobia with panic disorder, panic disorder without agoraphobia[,] and drug dependency in remission." AR at 36.

At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1." AR at 38 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926). In making his determination, ALJ Gerstner considered listings 12.04 (affective disorders) and 12.15 (trauma- and stressor-related disorders). AR at 38. Regarding Plaintiff's mental impairments, ALJ Gerstner first examined whether they met the "paragraph B" criteria. He found that Plaintiff has moderate limitations in the areas of understanding, remembering, or applying information; interacting with others; and concentrating, persisting, or maintaining pace; and mild limitations in the area of adapting or managing oneself. AR at 38-39. Because Plaintiff's "mental impairments do not cause at least two 'marked' limitations or one 'extreme' limitation, the 'paragraph B' criteria [were] not

satisfied." AR at 39. The ALJ also determined that Plaintiff did not meet the "paragraph

C" criteria. AR at 39.

At Step Four, the ALJ explained that while Plaintiff's "medically determinable

impairments could reasonably be expected to cause the alleged symptoms[,]" his

"statements concerning the intensity, persistence and limiting effects of these symptoms

are not entirely consistent with the medical evidence and other evidence in the record

. . . ." AR at 41. Ultimately, the ALJ found that Plaintiff

> has the [RFC] to perform a full range or work at all exertional levels but with
> the following nonexertional limitations: he is limited to work involving the
> performance of simple, routine tasks. He is limited to making simple work-
> related decisions. He can occasionally interact with supervisors and
> coworkers, but he can have only incidental contact with the general public.

AR at 39. ALJ Gerstner found that Plaintiff "has no past relevant work" (AR at 46), but

he is able to perform the positions of dishwasher, warehouse worker, auto detailer,

advertising material distributor, marker, photo copy machine operator, and router (AR at

47). The ALJ ultimately determined that Plaintiff "has not been under a disability, as

defined in the Social Security Act, from May 4, 2015, through the date of [the ALJ's]

decision." AR at 47 (citing 20 C.F.R. §§ 404.1520(g), 416.920(g)).

**III.    Legal Standard**

The Court must "review the Commissioner's decision to determine whether the

factual findings are supported by substantial evidence in the record and whether the

correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir.

2007) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1172 (10th Cir. 2005) (internal

citation omitted)). A deficiency in either area is grounds for remand. *Keyes-Zachary v.

Astrue*, 695 F.3d 1156, 1161, 1166 (10th Cir. 2012) (citation omitted). "Substantial

evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Lax*, 489 F.3d at 1084 (quoting *Hackett*, 395 F.3d at 1172 (internal quotation omitted)). "It requires more than a scintilla, but less than a preponderance." *Id.* (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004) (internal quotation omitted) (alteration in original)). The Court will "consider whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases, but [it] will not reweigh the evidence or substitute [its] judgment for the Commissioner's." *Id.* (quoting *Hackett*, 395 F.3d at 1172 (internal quotation marks and quotations omitted)).

"The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence." *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)). The Court "may not 'displace the agenc[y's] choice between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it de novo.'" *Id.* (quoting *Zoltanski*, 372 F.3d at 1200 (internal quotation omitted)).

## IV.    Discussion

Plaintiff contends that the ALJ made reversible errors by: (1) failing to incorporate all of the moderate limitations opined by Denise Glanville, PhD; and (2) improperly rejecting the assessments of treating providers Christina Vento, PsyD and Donald Ortiz, MD. *Doc. 16* at 1.

   **A.    ALJ Gerstner adequately incorporated the moderate limitations that Dr. Glanville opined into Plaintiff's mental RFC.**

Plaintiff first argues that the ALJ erred in failing to incorporate all of the moderate limitations that Dr. Glanville opined into the mental RFC. *Doc. 16* at 12-15. Denise Glanville, PhD, is a State agency medical examiner who reviewed the record and completed a Mental Residual Functional Capacity Assessment (MRFCA) on September 12, 2015. *See* AR at 44, 121-24, 134-37. "[T]he [MRFCA form] requires the [doctor] to first record preliminary conclusions about the effect of the impairment(s) on each of four general areas of mental function [in Section I,] then to prepare a narrative statement of mental RFC [in Section III]."[2] *Silva v. Colvin*, 203 F. Supp. 3d 1153, 1159 (D.N.M. 2016) (quoting POMS § DI 24510.061(A)). Plaintiff takes issue with the ALJ's alleged failure to incorporate limitations Dr. Glanville opined in two of these areas: (1) sustained concentration and persistence limitations; and (2) adaptation limitations. *Doc. 16* at 13-15; AR at 135-36. Within the first area, Dr. Glanville opined that Plaintiff has moderate limitations in (1) maintaining attention and concentration for extended periods; (2) performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances; and (3) completing a normal workday and workweek without interruptions from psychologically based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. AR at

---

[2] The MRFCA form Dr. Glanville completed does not identify "Section I," but it does have a section entitled "MRFC1." *See* AR at 121, 134. Nor does it identify a "Section III," but the form does specify that "the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion. This discussion(s) is documented in the explanatory text boxes following each category of limitation (i.e., understanding and memory, sustained concentration and persistence, social interaction and adaptation." AR at 122, 135-36. "Any other assessment information deemed appropriate may be recorded in the MRFC – Additional Explanation text box." AR at 122, 135. *See also Parker v. Berryhill*, No. 16-CV-01182-PAB, 2018 WL 4520151, at *4 n.4 (D. Colo. Sept. 21, 2018).

135. Within the second area, Dr. Glanville opined that Plaintiff has moderate limitations in responding appropriately to changes in the work setting. AR at 136.

Plaintiff argues that because ALJ Gerstner gave Dr. Glanville's opinion significant weight, he erred in failing to either incorporate these four moderate limitations into the RFC, explain why he rejected them, or mention them in hypotheticals to the VE. *See Doc. 16* at 14-15 (citing *Frantz v. Astrue*, 509 F.3d 1299, 1303 (10th Cir. 2007); *Hamlin v. Barnhart*, 365 F.3d 1208, 1219 (10th Cir. 2004)). "ALJs are required to weigh medical source opinions and to provide 'appropriate explanations for accepting or rejecting such opinions.'" *Silva*, 203 F. Supp. 3d at 1164 (quoting SSR 96-5p, 1996 WL 374183, at *5 (emphasis omitted); citing *Keyes-Zachary*, 695 F.3d at 1161 (citing 20 C.F.R. §§ 404.1527(e)(2)(ii), 416.927(e)(2)(ii))).

The ALJ determined that Plaintiff "is limited to work involving the performance of simple, routine tasks[,]" he "is limited to making simple work-related decisions[, h]e can occasionally interact with supervisors and coworkers, but he can have only incidental contact with the general public." AR at 39. The Commissioner asserts that these limitations "account for any deficits in Plaintiff's concentration, persistence and pace, and adaptability to changes in a work settings . . . ." *Doc. 18* at 11.

### 1. Sustained concentration and persistence limitations

Three of the four limitations Plaintiff refers to fall under the heading of "sustained concentration and persistence limitations." *See* AR at 135. The Court finds that the ALJ was not required to incorporate the first limitation—maintaining attention and concentration for extended periods—into Plaintiff's RFC, because Plaintiff is limited to unskilled work. *See* AR at 39, 47. "Unskilled work generally requires only the following:

(1) '[u]nderstanding, remembering, and carrying out simple instructions'; (2) '[m]aking judgments that are commensurate with the functions of unskilled work—i.e., simple work-related decisions'; (3) '[r]esponding appropriately to supervision, co-workers and usual work situations'; and (4) '[d]ealing with changes in a routine work setting.'" *Nelson v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016) (quoting SSR 96-9p, 1996 WL 374185, at *9 (July 2, 1996)).

In *Nelson*, a psychologist completed an MRFCA and found that the plaintiff had a moderate limitation in her ability to maintain attention and concentration for extended periods. *Id.* at 628. The ALJ limited the plaintiff to unskilled work. *Id.* at 629. The plaintiff argued that the ALJ failed to account for this limitation, and the Tenth Circuit disagreed, finding that "unskilled work does not . . . require the ability to maintain attention and concentration for extended periods . . . ." *Id.* The same is true here. Because ALJ Gerstner limited Plaintiff to unskilled work, he did not err in failing to specifically incorporate a limit regarding the ability to maintain attention and concentration for *extended* periods. *See id.*; *see also* AR at 39, 47.

The second and third limitations are not disposed of so neatly, but the Court finds no reversible error. Plaintiff contends that a limitation to unskilled "work involving the performance of simple, routine tasks" and "simple work-related decisions" does not encompass the moderate limitations Dr. Glanville opined regarding his abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; and to complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods. *See Doc. 16* at 15. The

Commissioner summarily responds that the RFC accounted for these two limitations (*Doc. 18* at 11 (citing *Smith v. Colvin*, 821 F.3d 1264, 1269 (10th Cir. 2016)), and that "there is no requirement in the regulations for a direct correspondence between an RFC finding and a specific medical opinion on the functional capacity in question" (*id.* (quoting *Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012)).

In determining this issue, the Court finds it helpful to examine Dr. Glanville's narrative comments and the ALJ's statements regarding Plaintiff's mental impairments. In the relevant narrative portion of the MRFCA form, Dr. Glanville stated that "PTSD symptoms interfere with [Plaintiff's] ability to sustain concentration and attention"; his "[s]leep quality/quantity is variable"; "[h]e is distracted by other people due to paranoia and flashbacks"; and "[h]e is able to follow the terms of his current probation." AR at 135-36. The ALJ specifically noted these narrative comments. AR at 44. In weighing Dr. Glanville's opinion, ALJ Gerstner noted that her opinion is "consistent with objective treatment records which indicate that [Plaintiff] sought little care for his allegedly disabling conditions, that he responded well to medication when he was medically compliant, that he went back to school for at least a semester, that he went to the park, store and church[,] and that providers opinioned that he was 'doing well.'" AR at 44-45.

Immediately after weighing Dr. Glanville's opinion, the ALJ specifically discussed the mental RFC, explaining that he "limited Plaintiff to work involving the performance of simple, routine tasks, while limiting him to making simple work-related decisions." AR at 45. He noted that the "record indicates that [Plaintiff] has a history of being non-medically compliant including stopping prescribed medications without provider approval, not following up with providers as directed, having gaps in treatment[,] and not

following through on referrals for specialized care." AR at 45. He further "noted that the evidence of record indicates that [Plaintiff] has never worked at the level of significant gainful activity and that he did not work at all in 2010, 2011 or 2014. His sporadic earnings record suggests a lack of attachment to the workplace for reasons unrelated to his alleged severe impairments." AR at 45. The ALJ summarized that while Plaintiff's "mental conditions . . . cause him some limitations[,] . . . the evidence of record also suggests that [he] has obtained minimal care for his conditions and that when he did obtain care, he responded well to treatment." AR at 45.

The Court finds that the ALJ adequately explained his RFC assessment, and this explanation accounts for Dr. Glanville's opinion—both the moderate limitations and her narrative explanation. This is not a case, as it was in *Haga v. Astrue*, where the ALJ "failed to explain his reasons for rejecting some of [a reviewing physician's] restrictions, while implicitly adopting others." *See* 482 F.3d 1205, 1207 (10th Cir. 2007). Instead, while the ALJ did not expressly reject any limitation, he did acknowledge Dr. Glanville's narrative explanation and explain why the RFC adequately incorporated all her opined limitations, assuming Plaintiff is medically compliant. *See* AR at 44-45; *cf. Smith*, 821 F.3d at 1268-69 (finding that a limit to unskilled work encompassing "only simple, repetitive, and routine tasks" adequately accounted for certain moderate limitations, including in the ability to complete a normal workday and workweek without interruption for psychologically based systems); *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (finding that a limitation to unskilled work adequately accounted for moderate limitations in concentration, persistence, and pace); *Riggins v. Berryhill*, No. 16-1414-SAC, 2017 WL 3839419, at *3 (D. Kan. Sept. 1, 2017) (where physician found that

plaintiff could perform simple, repetitive activities despite an opined moderate limitation in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and a second physician opined that a moderate limitation in the same ability "would depend on medication compliance[,]" the district court found that "[o]n the facts of this case, . . . the ALJ's RFC findings [limiting the plaintiff to simple, repetitive, and routine tasks] are generally consistent with the three medical source opinions on this issue"). Ultimately, the Court finds that the ALJ provided an appropriate explanation for the weight he gave to Dr. Glanville's opinion and how he incorporated it into the RFC. *See Silva*, 203 F. Supp. 3d at 1164. The Court finds no reversible error on this issue.

### 2. Adaptation limitations

Dr. Glanville also opined that Plaintiff has a moderate limitation in responding appropriately to changes in the work setting. AR at 136. Plaintiff argues that the RFC does not encompass this limitation. *Doc. 16* at 15. The Court turns first to Dr. Glanville's narrative explanation, in which she states that "[c]hanges to [Plaintiff's] routine tend to trouble him"; "[h]e is always thinking negatively"; he "[h]as difficulty dealing with authority figures secondary to past experiences"; and he "[i]s paranoid and startles easily[,] therefore has problems being in public." AR at 136. She also summarized her opinion by stating that Plaintiff "is capable of at least unskilled types of work with limited social interactions." AR at 136.

The ALJ noted this narrative explanation (AR at 44) and discussed the evidence that cuts against an adaptation limitation, including evidence that Plaintiff attended school, "traveled to visit family, lived in another city for a while," and frequented

entertainment venues. AR at 45. And again, the ALJ stated that Plaintiff "responded well to medication when he was medically compliant" and may have "a lack of attachment to the workplace for reasons unrelated to his alleged severe impairments." AR at 45. The Court finds that the ALJ's discussion of Dr. Glanville's opinion and the record evidence explains why the limitation to unskilled work with simple, routine tasks and simple work-related decisions adequately accounts for any moderate adaptation limitation. The Court will deny Plaintiff's motion on this issue.

### B. The ALJ adequately weighed the opinions of Dr. Vento and Dr. Ortiz.

Plaintiff next argues that ALJ Gerstner improperly rejected the opinions of Drs. Vento and Ortiz, both of whom were treating physicians. *Doc. 16* at 16-21. "The ALJ should accord opinions of treating physicians controlling weight when those opinions are well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record; this is known as the 'treating physician rule.'" *Padilla v. Colvin*, No. CV 14-495 CG, 2015 WL 10383109, at *4 (D.N.M. June 29, 2015) (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)). "A treating physician's opinion is accorded controlling weight because the treating physician has a 'unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations.'" *Id.* (quoting *Doyal*, 331 F.3d at 762 (internal quotation omitted)).

If an ALJ decides that a treating physician's opinion is entitled to less than controlling weight, the ALJ must follow two steps. *See id.* at *5. First, if the opinion is not well-supported by the medical evidence or if it is "inconsistent with other substantial

evidence in the record[,]" the ALJ will not give the opinion controlling weight. *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011) (citing *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) (applying SSR 96-2p, 1996 WL 374188, at *2); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2)). At the second step of the analysis of a treating physician's opinion, the ALJ "must determine what deference he will accord the opinion after considering the six deference factors listed" in 20 C.F.R. §§ 404.1527 and 416.927. *Padilla*, 2015 WL 10383109, at *4; *see also Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004). The factors include:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Padilla*, 2015 WL 10383109, at *4 (quoting *Watkins*, 350 F.3d at 1300 (internal quotations omitted)). "When evaluating any medical opinion in the record, the ALJ must give good reasons—reasons that are 'sufficiently specific to make clear to any subsequent reviewers'—for the weight that he ultimately assigns to" those opinions. *Id.* (quoting *Langley*, 373 F.3d at 1119 (internal quotations omitted)). The ALJ's "determination, like all of his findings, must be supported by substantial evidence." *Id.*

### 1.  Dr. Vento

Dr. Vento completed six forms: three dated January 4, 2016 (AR at 487-490), and three dated June 1, 2017 (AR at 56-59). Each set of three forms contains:

(1) Medical Assessment of Ability to do Work-Related Activities (Mental) (AR at 56-57, 487-88); (2) 12.04 Affective Disorders (AR at 58, 489); and (3) 12.06 Anxiety-Related Disorders (AR at 59, 490).

Plaintiff takes issue with the second step of ALJ Gerstner's analysis. He contends that the ALJ "selectively picked and chose statements from Dr. Vento's treatment notes" that favored a finding of non-disability and "ignored those portions of the treatment notes that emphasized [Plaintiff's] continuing mental impairments . . . ." *Doc. 16* at 17-18. He also alleges that the ALJ gives "little consideration" to the relevant deference factors. *Id.* at 19.

With respect to the first, second, and fifth factors, ALJ Gerstner noted that Plaintiff sought care from Dr. Vento, his treating provider, from March 2015 through 2017 for counseling and medication management. AR at 41-46. With respect to the third factor, the ALJ found that Dr. Vento's "opinions regarding [Plaintiff's] limitations are only partially consistent with her objective treatment notes, which indicate that [he] returned to school, reporting he was 'doing okay,' was handling his daughter's custody case on his own[,] and took his daughter to an amusement park." AR at 46. Plaintiff argues that the ALJ picked and chose statements from the treatment notes to support a finding of non-disability. *Doc. 16* at 17-18. The Court disagrees and finds that ALJ Gerstner mentions the above statements to explain why he found her opinions were not consistent with the relevant evidence.

Plaintiff presents a laundry list of signs and symptoms that he contends the ALJ failed to mention, but the Court does not look at the ALJ's analysis of Dr. Vento's opinion in a vacuum—it also considers his summaries of her treatment notes earlier in

his decision. Examining his decision as a whole, it is clear that he considered and listed many of the signs and symptoms from Dr. Vento's notes that support Plaintiff's allegations of mental limitations. For example, the ALJ noted Plaintiff's self-reports of "intrusive and distressing recollections of violent incidences in his past, decreased concentration and difficulty sleeping" (AR at 41 (citing AR at 434)); her notes that Plaintiff "had an expansive mood, more rapid speech and thought and had been more impulsive" (AR at 41 (citing AR at 483)); that he had "reported a recent 5 days of agitation and that he was having difficulty working more than 4 hours a day" (AR at 42 (citing AR at 448)); that he "was having more panic attacks and was seeing spiders when they were not there" (AR at 43, 510); that he returned to school but "had some difficulty retaining the lectures[,]" found school challenging, and "needed 'to go over things multiple times.'" AR at 43, 506, 508.

The ALJ did not touch on the fourth factor, which Plaintiff argues was error, as "Dr. Vento's assessments were consistent with Dr. Ortiz's assessment of [Plaintiff's] non-exertional limitations in five of the six categories Dr. Ortiz assessed." *Doc. 16* at 19 (citing AR at 397-98, 487-88, 520) (emphasis omitted). As discussed in the next section, however, the ALJ did not err in discounting Dr. Ortiz's opinions, and the Court finds no error in his failure to explicitly compare the physicians' opinions.

With respect to the sixth factor, ALJ Gerstner stated that Dr. Vento's "opinions regarding [Plaintiff's] limitations are internally inconsistent within the same set of documents." AR at 46. Plaintiff argues that the ALJ erred in failing to explain these internal inconsistencies. *Doc. 16* at 18-19. Plaintiff cites to *Crowder v. Colvin*, 561 F. App'x 740, 742 (10th Cir. 2014), for the proposition that an "internal inconsistency in an

examining doctor's assessment does not constitute an[] 'adequate ground to reject the opinion entirely.'" *Doc. 16* at 19 (quoting *Crowder*, 561 F. App'x at 742). Plaintiff has misstated *Crowder*. In *Crowder*, an examining licensed psychologist (Dr. Vega) examined the plaintiff and opined "moderate-to-marked limitations in seventeen of twenty areas . . . ." 561 F. App'x at 742. "The ALJ effectively rejected Dr. Vega's findings, giving them very little weight because they are internally inconsistent, the exam was undertaken at the request of the claimant's representative, and there [was] no treating relationship between the examiner and the claimant." *Id.* (internal quotation marks and quotation omitted) (citing *Chapo*, 682 F.3d at 1291 ("equating 'according little weight to' with 'effectively rejecting' a medical opinion"). The ALJ explained that, with respect to the problem of internal inconsistency, the fact that Dr. Vega had marked both moderate and marked "prevents an effective evaluation of the severity of the claimant's limitations." *See id.* The Tenth Circuit found this was error, however, because Dr. Vega opined at least moderate impairments, and "the fact that Dr. Vega did not choose either 'moderate' or 'marked' is not an adequate ground to reject the opinion entirely." *See id. Crowder* is inapposite to the case at hand.

Here, the ALJ mentioned that Dr. Vento's opinions "are internally inconsistent within the same set of documents[,]" but he did not clarify his statement. *See* AR at 46. This might pose a problem, had the ALJ not also mentioned these inconsistencies when he summarized Dr. Vento's opinions earlier in his decision. Regarding Dr. Vento's opinions contained in the 2016 12.04 and 12.06 listings forms, the ALJ noted that these forms, which were "apparently . . . created by [Plaintiff's] representatives[,] . . . include

the old listing 12.04 and 12.06 criteria."[3] AR at 42. These check-the-box forms had sections where Dr. Vento could mark which of the old "paragraph A," "paragraph B," and/or "paragraph C" criteria Plaintiff satisfied. *See* AR at 489-90. With respect to the "paragraph B" criteria, Dr. Vento marked on the January 4, 2016 12.04 form that Plaintiff had marked limitations in three areas: (1) activities of daily living; (2) maintaining social functioning; and (3) maintaining concentration, persistence or pace. AR at 489. On the January 4, 2016 12.06 form, Dr. Vento marked that Plaintiff had marked limitations in only two areas: (1) maintaining social functioning; and (2) maintaining concentration, persistence, or pace. AR at 490. The Court is certain that the ALJ was referring to at least this inconsistency.[4]

And while the ALJ did not make the same note with respect to the 2017 12.04 and 12.06 listings form, the Court notes a similar inconsistency. *See* AR at 44. On the June 1, 2017 12.04 form, Dr. Vento opined that Plaintiff had marked limitations in all four "paragraph B" criteria: (1) activities of daily living; (2) maintaining social functioning; (3) maintaining concentration, persistence or pace; and (4) repeated episodes of decompensation, each of extended duration. AR at 58. On the June 1, 2017 12.06 form, she only marked three of these criteria: (1) activities of daily living; (2) maintaining social functioning; and (3) maintaining concentration, persistence or pace. AR at 59. The Court

---

[3] The criteria were revised in September 2016. *See Revised Medical Criteria for Evaluating Mental Disorders*, 81 FR 66138-01, 2016 WL 5341732 (Sept. 26, 2016) (listing the newer criteria for 12.04 (depressive, bipolar and related disorders) and 12.06 (anxiety and obsessive-compulsive disorders)).

[4] An argument could be made that there is also an inconsistency regarding the "paragraph C" criteria; however, as the language for the criteria between the two forms is not identical, any inconsistency is not as readily apparent as it is for the "paragraph B" criteria. *See* AR at 489-90.

finds that it can sufficiently follow the ALJ's reasoning, and this is a valid reason to discount Dr. Vento's opinion.

Ultimately, the Court finds that ALJ Gerstner accurately summarized Dr. Vento's treatment notes (*see* AR at 41-44) and adequately considered the relevant factors in weighing Dr. Vento's opinions (*see* AR at 46). The Court declines to reverse on this issue.

### 2. Dr. Ortiz

Plaintiff saw Dr. Ortiz, his treating physician, six times from May 2015 through May 2017. *See* AR at 472-75, 491-96. Dr. Ortiz submitted two Medical Assessment of Ability to do Work-Related Activities forms—one for physical limitations, one for non-physical limitations. *See* AR at 518-20. The ALJ gave Dr. Ortiz's opinions little weight because they were "inconsistent with his minimal objective treatment notes, which indicate [Plaintiff] had a normal mood, appeared in no distress[,] and had unremarkable physical examinations." AR at 44. Plaintiff argues that this analysis is insufficient because the ALJ does not cite to the record to support any inconsistencies. *Doc. 16* at 20.

While it is always more convenient for the parties and the Court to follow an ALJ's analysis when he accurately cites to the record throughout the decision, the Court has no concerns here. The ALJ cited to the record earlier in his decision when he noted that Plaintiff "sought care for back pain" and Dr. Ortiz "noted that he had a normal affect" (AR at 42 (citing AR at 473-75)), that he "sought care . . . for physical issues" and "Dr. Ortiz noted in 2016 that [he] exhibited a normal and appropriate affect" (AR at 43 (citing AR at 491-516); *see* AR at 495), that when Dr. Ortiz saw him in April 2017, he noted

Plaintiff "had a normal affect and looked 'well'" (AR at 43 (citing AR at 491-516); *see* AR at 494); and finally that in May 2017 Dr. Ortiz "again opined that [Plaintiff] looked well and had a normal affect" (AR at 43, 495). The ALJ adequately summarized the sparse treatment notes, and the Court can easily follow the ALJ's reasoning. Further, while Plaintiff alleges error, he does not attempt to point out any of Dr. Ortiz's treatment notes that are allegedly consistent with his opinions that Plaintiff is markedly limited in his abilities to maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerance, maintain physical effort for long periods without a need to decrease activity or pace, or to rest intermittently, work in coordination with/or proximity to others without being distracted by them, or to complete a normal workday and workweek without interruptions from pain or fatigue based symptoms and to perform at a consistent pace without unreasonable number and length of rest periods. *See* AR at 520. As Dr. Ortiz merely noted that Plaintiff's mood was normal and his affect appropriate, Plaintiff would be hard-pressed to find any treatment notes that support Dr. Ortiz's extreme opinions.

Plaintiff also disagrees that his physical examinations were "unremarkable" and lists a variety of complaints that Dr. Ortiz treated. *Id.* at 20-21. As the Commissioner points out, however, Plaintiff is simply asking the Court to reweigh the evidence, a task the Court may not do. *See Doc. 18* at 14; *see also Lax*, 489 F.3d at 1084.

## V. Conclusion

The Court finds that the ALJ provided an appropriate explanation for the weight he gave to Dr. Glanville's opinion and how he incorporated it into the RFC. The Court

finds the ALJ adequately analyzed and weighed Dr. Vento's and Dr. Ortiz's opinions.

Thus, the Court finds no reversible error and will deny Plaintiff's motion.

Wherefore,

**IT IS ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing

with Supporting Memorandum (*Doc. 16*) is **DENIED**.

_____
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent